NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| CARLA GUIGNARD and DAVID GUIGNARD, her husband,<br><br>        *Plaintiffs*,<br><br>   v.<br><br>BIOMET, INC.; BIOMET ORTHOPEDICS, LLC; BIOMET U.S. RECONSTRUCTION, LLC; BIOMET MANUFACTURING, LLC; ZIMMER BIOMET HOLDINGS, INC.; BIOMET FAIR LAWN, LLC; STEPHEN R. DAVIS; and LEGACY ORTHOPEDICS, INC.;<br><br>        *Defendants*. | Civil No.: 18-14521 (KSH) (CLW)<br><br>**Opinion** |

**Katharine S. Hayden, U.S.D.J.**

**I.     Introduction**

Plaintiffs sued defendants in state court alleging that they are liable for injuries allegedly sustained by plaintiff Carla Guignard from heavy-metal poisoning caused by a metal hip replacement implant. (D.E. 1, Ex. A ("Compl.").) Defendants removed the action to this Court pursuant to 28 U.S.C. § 1441(a), claiming that there is complete diversity of citizenship because the non-diverse defendants have been fraudulently joined and the amount in controversy exceeds $75,000 thereby conferring this Court with jurisdiction under 28 U.S.C § 1332(a). (D.E. 1 ("Notice of Removal").) Plaintiffs now move to remand. (D.E. 13.) As set forth below, the motion is granted.

## II. Background

This matter is a product liability case concerning a metal hip replacement implant called the Biomet Magnum Metal on Metal Hip Replacement System (the "Magnum"). (Compl., ¶¶ 1-2.) On June 7, 2010, Carla Guignard was implanted with the Magnum. (*Id.* ¶ 116.) Plaintiffs allege that over the next seven years the Magnum "continuously released toxic heavy metals into [Carla Guignard's] body, gradually poisoning her," which "was the result of the design and manufacture of the Magnum." (*Id.* ¶¶ 117, 119.) Plaintiffs claim that on July 10, 2017, Carla Guignard had surgery to remove the source of the metal from the Magnum. (*Id.* ¶ 123.)

On August 24, 2018, plaintiffs filed a five-count state law complaint against defendants in state court asserting (i) failure to warn in violation of the New Jersey Products Liability Act (the "NJPLA"), N.J.S.A. 2A:58C-1 *et seq.* (*id.* ¶¶ 125-31), (ii) manufacturing and design defect in violation of the NJPLA (*id.* ¶¶ 132-37), (iii) common law fraud (*id.* ¶¶ 138-42), (iv) breach of the New Jersey Consumer Fraud Act (the "NJCFA"), N.J.S.A. 56:8-1 *et seq.* (*id.* ¶¶ 143-52), and (v) a *per quod* claim on behalf David Guignard, (*id.* ¶¶ 153-55).

On October 1, 2018, defendants removed the action to this Court pursuant to 28 U.S.C. § 1441(a), relying on diversity of citizenship under 28 U.S.C. § 1332(a). (Notice of Removal.) Defendants assert that defendants Biomet Fair Lawn, LLC ("Fair Lawn"), Stephen R. Davis ("Davis"), and Legacy Orthopedics, Inc. ("Legacy") were fraudulently joined in order to defeat federal diversity jurisdiction. (*Id.* ¶¶ 13, 16.)

Plaintiffs are citizens of New Jersey. (Compl. at 1-2.) Defendants Biomet, Inc., Biomet Orthopedics, LLC, Biomet U.S. Reconstruction, LLC, Biomet Manufacturing, LLC, and Zimmer Biomet Holdings, Inc. are citizens of Delaware, Indiana, or both. (*Id.* ¶ 4; Notice of Removal, ¶¶

6-10.) The parties dispute the citizenship of defendant Fair Lawn.[1] Defendants Davis and Legacy are citizens of New Jersey. (Compl., ¶¶ 7, 11; Notice of Removal, ¶¶ 15-16.)

On October 31, 2018, plaintiffs moved to remand the action back to state court on the ground that Fair Lawn, Davis, and Legacy were not fraudulently joined. (D.E. 13.)

## III. Discussion

### A. Standard of Review

Pursuant to 28 U.S.C. § 1441(a), "any civil action brought in a State court of which the district courts of the United States have original jurisdiction, may be removed by the defendant or the defendants, to the district court of the United States for the district and division embracing the place where such action is pending." "The federal removal statute is strictly construed, requiring remand if any doubt exists over whether removal was proper." *Carlyle Inv. Mgmt. LLC v. Moonmouth Co. SA*, 779 F.3d 214, 218 (3d Cir. 2015) (citation omitted). The removing party bears the burden of demonstrating that the federal court has jurisdiction at all stages of the case. *Samuel-Bassett v. KIA Motors Am., Inc.*, 357 F.3d 392, 396 (3d Cir. 2004). As such, a court "must resolve all contested issues of substantive fact in favor of the plaintiff and must resolve any uncertainties as to the current state of controlling substantive law in favor of the plaintiff." *Boyer v. Snap-on Tools Corp.*, 913 F.2d 108, 111 (3d Cir. 1990).

Moreover, when federal jurisdiction is founded solely on the diversity of the parties, as is the case here, the forum-defendant rule applies. *Encompass Ins. Co. v. Stone Mansion Rest. Inc.*, 902 F.3d 147, 152 (3d Cir. 2018). That rule directs that "[a] civil action otherwise removable solely on the basis of the jurisdiction under [28 U.S.C. § 1332(a)] may not be removed if any of

---

[1] Plaintiffs allege that Fair Lawn is a citizen of New Jersey because its principal place of business is in New Jersey. (Compl., ¶ 5.) By contrast, defendants contend that Fair Lawn is a citizen of Indiana because its sole member, Biomet, Inc., is a citizen of Indiana. (Notice of Removal, ¶ 12.)

3

the parties in interest properly joined and served as defendants is a citizen of the State in which such action is brought." 28 U.S.C. § 1441(b)(2).

      **B.**      <u>**Fraudulent Joinder Standard**</u>

"The doctrine of fraudulent joinder represents an exception to the requirement that removal be predicated solely upon complete diversity." *In re Briscoe*, 448 F.3d 201, 215–16 (3d Cir. 2006). In such a case, "the diverse defendant may still remove the action if it can establish that the non-diverse defendants were 'fraudulently' named or joined solely to defeat diversity jurisdiction." *Id.* at 216. But "[b]ecause a party who urges jurisdiction on a federal court bears the burden of proving that jurisdiction exists, a removing party who charges that a plaintiff has fraudulently joined a party to destroy diversity of jurisdiction has a 'heavy burden of persuasion.'" *Boyer*, 913 F.2d at 111 (quoting *Steel Valley Auth. v. Union Switch & Signal Div.*, 809 F.2d 1006, 1012 n.6 (3d Cir. 1987)). Joinder is fraudulent if there is "no reasonable basis in fact or colorable ground supporting the claim against the joined defendant, or no real intention in good faith to prosecute the action against the defendant or seek a joint judgment." *Abels v. State Farm Fire & Cas. Co.*, 770 F.2d 26, 32 (3d Cir. 1985) (citation and internal quotation marks omitted). And while a court may "'look beyond the face of the complaint for indicia of fraudulent joinder,'" *Briscoe*, 448 F.3d at 218 (quoting *Abels*, 770 F.2d at 29), it may not inquire into the legal merits of a claim in resolving a preliminary question of jurisdiction, *id.* at 219.

"If the district court determines that the joinder was 'fraudulent' . . . , the court can 'disregard, for jurisdictional purposes, the citizenship of certain nondiverse defendants, assume jurisdiction over a case, dismiss the nondiverse defendants, and thereby retain jurisdiction.'" *Id.* at 216 (quoting *Mayes v. Rapoport*, 198 F.3d 457, 461 (4th Cir. 1999)). By contrast, "if the district

4

court determines that it does not have subject-matter jurisdiction over the removed action because the joinder was not fraudulent, it must remand to state court." *Id.*

### C. The NJPLA's Seller Safe Harbor

While the parties disagree about the citizenship of Fair Lawn, it is unnecessary for the Court to resolve this issue on this motion to remand. It need only address the alleged fraudulent joinder of Davis and Legacy.

The parties agree that Davis and Legacy are both citizens of New Jersey. (Compl., ¶¶ 7, 11; Notice of Removal, ¶¶ 15-16.) There is therefore a lack of complete diversity because plaintiffs are also citizens of New Jersey, which would normally deprive this Court of subject matter jurisdiction under 28 U.S.C. § 1332(a). Defendants contend, however, that Davis and Legacy were fraudulently joined because, as product sellers, they have a complete defense to plaintiffs' product liability claims under the NJPLA (*id.* ¶ 40), and because the NJPLA subsumes plaintiffs' fraud and *per quod* claims, (*id.* ¶ 39 n.1). In other words, defendants maintain that Davis and Legacy should be dismissed from this action because plaintiffs cannot state a colorable claim against them.[2]

The NJPLA provides that "[i]n any product liability action against a product seller, the product seller may file an affidavit certifying the correct identity of the manufacturer of the product which allegedly caused the injury, death or damage," N.J.S.A. 2A:58C-9(a), which Davis and Legacy have done, (D.E. 1-2). "Upon filing the affidavit," "the product seller shall be relieved of all strict liability claims, ***subject to the provisions set forth in subsection d. of this section***." N.J.S.A. 2A:58C-9(b) (emphasis added). Subsection d, which defendants contend is not at issue (D.E. 18 at 7-8), sets forth three exceptions where, despite filing an affidavit, a product seller is

---

[2] Defendants do not argue that plaintiffs' claims against Davis or Legacy are made in bad faith.

liable. For example, as is relevant here, a product seller is liable if they "knew or should have known of the defect in the product which caused the injury." N.J.S.A. 2A:58C-9(d)(2). Critically, the defendant-seller invoking immunity under the NJPLA—not the plaintiff—"bears the burden of showing that it does not fit into one of the . . . exceptions to the seller safe harbor." *DeGennaro v. Rally Mfg. Inc.*, No. 09-443, 2011 WL 5248153, at *8 (D.N.J. Nov. 2, 2011) (Sheridan, J.). With that being the case, whether a product seller may raise the NJPLA's safe harbor is a merits question that is appropriately addressed at summary judgment. *Fid. & Guar. Ins. Underwriters, Inc. v. Omega Flex, Inc.*, 936 F. Supp. 2d 441, 454 (D.N.J. 2013) (Hillman, J.). That inquiry is therefore well beyond any determination this Court may make in the fraudulent joinder context. *See Batoff v. State Farm Ins. Co.*, 977 F.2d 848, 852 (3d Cir. 1992) ("But the inquiry into the validity of a complaint triggered by a motion to dismiss under Rule 12(b)(6) is more searching than that permissible when a party makes a claim of fraudulent joinder.").[3]

Disregarding defendants' argument that Davis and Legacy are immune, plaintiffs clearly allege sufficient facts, accepted as true, that would subject Davis and Legacy to liability under the exception to the seller safe harbor that they knew or should have known about the purported defect with the Magnum. Plaintiffs assert that Davis and Legacy "selected the components and tools to present in the operating room when Carla Guignard was surgically implanted with the Biomet Magnum." (Compl., ¶ 14.) Plaintiffs maintain that defendants continued to promote the Magnum in the United States despite a negative study from Turku University that "discouraged use of Biomet Magnum hip replacements." (*Id.* ¶ 76.) According to plaintiffs, defendants also failed to disclose "the need for physicians to screen their patients" for any negative reaction to the metal

---

[3] On June 20, 2019, defendants sought leave of the Court to file affidavits from Davis and Legacy as a sur-reply, claiming that the affidavits confirm that Davis and Legacy are immune from liability under the NJPLA. (D.E. 27.) Because immunity under the NJPLA is a factually laden issue that this Court may not resolve on a motion to remand, it will not consider those affidavits.

6

debris from the Magnum. (*Id.*) Plaintiffs further allege that "[d]efendants have failed to disclose to orthopedic surgeons or the public in the United States that the Magnum hip replacement was recalled in Australia and that the Australian government issued a 'Hazard Alert' regarding the Magnum." (*Id.* ¶ 94.) Due to "[d]efendants' failure to warn physicians and patients that the Biomet Magnum metal on metal hip replacements that were surgically implanted in patients' bodies may be releasing toxic heavy metals," plaintiffs claim that "thousands of United States patients [have] ticking time-bombs in their hips." (*Id.* ¶ 112.) Those alleged facts demonstrate that plaintiffs' product liability claims against Davis and Legacy are not frivolous and are supported by a "reasonable basis in fact [and] colorable ground." *Abels*, 770 F.2d at 32.

Because plaintiffs' product liability claims against Davis and Legacy are colorable, the Court need not determine whether their fraud and *per quod* claims are subsumed by the NJPLA.[4] Nor should it. That question is properly raised on the merits at the motion to dismiss stage. *See Rodger v. Biomet, Inc.*, No. 18-14526, 2019 WL 2029547, at *4 (D.N.J. Apr. 15, 2019) (Mannion, Mag.) (explaining in resolving a motion to remand that whether fraud and NJCFA claims are subsumed by the NJPLA "is a matter that may be addressed upon consideration of the merits"), *report and recommendation adopted,* No. 18-14526, 2019 WL 2027230 (D.N.J. May 7, 2019) (Salas, J.); *Morton v. Biomet, Inc.*, No. 18-14506, 2019 WL 1904005, at *4 (D.N.J. Apr. 9, 2019) (Falk, Mag.) (declining to address whether an NJCFA claim was subsumed by the NJPLA on a motion to remand because "this issue is often vigorously disputed in dispositive motion practice"), *report and recommendation adopted*, No. 18-14506, 2019 WL 1903655 (D.N.J. Apr. 29, 2019) (Martini, J.).

---

[4] For this reason, it also unnecessary for the Court to address defendants' argument that Fair Lawn was fraudulently joined because it is immune from liability under the Biomaterials Access Assurance Act, 21 U.S.C. §§ 1601-06. (*See* Notice of Removal, ¶ 20.)

7

In short, defendants have not carried their burden to prove that plaintiffs fraudulently joined Davis or Legacy. Thus, complete diversity does not exist, and the forum-defendant rule bars removal. Accordingly, the Court lacks subject matter jurisdiction over this action.

## IV. Conclusion

For the foregoing reasons, plaintiffs' motion to remand is granted. An appropriate order will be entered.

/s/ Katharine S. Hayden
Date: June 30, 2019　　　　　　　　　　　　　　Katharine S. Hayden, U.S.D.J.